OPINION OF THE COURT
Louise Gruner Gans, J.
May an action to recover assets transferred in violation of the Bulk Sales Act (UCC art 6), or an action to recover assets fraudulently transferred in derogation of the rights of creditors, pursuant to article 10 of the Debtor and Creditor Law, be maintained against the transferee of the assets in the Civil Court of the City of New York?
The court holds that each such action is a species of action for rescission which, pursuant to CCA 213, may be maintained in the Civil Court of the City of New York, as long as the amount in controversy does not exceed $25,000.
*923 Plaintiff Talbot Typographies, Inc. (Talbot), commenced this action in the Civil Court of the City of New York against defendants Tenba, Inc. (Tenba) and Quality Cases, Ltd. (Quality), for moneys due and owing to plaintiff Talbot for services and materials Talbot had provided pursuant to a contract with defendant Tenba. The complaint states eight causes of action, of which the first five are based on claims for breach of contract, account stated, unjust enrichment, quantum meruit, and a claim for legal fees due under the contract. Plaintiff’s sixth, seventh and eighth causes of action are the subject of this decision.
Plaintiff’s sixth and seventh causes of action seek to recover a judgment against defendant Quality Cases, Ltd. under the Bulk Sales Act (UCC art 6). According to the complaint, in December 1988, after plaintiff Talbot’s claim against Tenba had already accrued, defendant Tenba, Inc., on the one hand informed Talbot that it was unable to pay its debts, and on the other hand transferred its assets, including stock in trade, accounts receivable and good will, to defendant Quality Cases, Ltd. Based on these facts, the sixth cause of action alleges that the transfer of the assets of Tenba, Inc., without prior notice to creditors as required by UCC 6-102, 6-105, 6-107, must be treated as ineffective against plaintiff Talbot. The seventh cause of action likewise seeks to have the transfer of assets to Quality declared ineffective as against Talbot, based on Tenba’s failure to provide Quality with a complete list of its creditors and with an accurate accounting of amounts owed by Tenba to such creditors as required by UCC 6-104.
The eighth cause of action seeks to set aside the transfer of assets by Tenba to Quality as an allegedly fraudulent conveyance, pursuant to article 10 of the Debtor and Creditor Law, including Debtor and Creditor Law § 278. The monetary amount claimed by plaintiff on any of its causes of action does not exceed $12,000.
Defendants Tenba and Quality have moved pursuant to CPLR 3211 (a) (2) to dismiss plaintiff’s sixth, seventh and eighth causes of action, alleging that these are claims in equity over which the Civil Court of the City of New York lacks subject matter jurisdiction.
Defendants’ argument would have been correct, had it been made prior to 1980. Prior to 1980, H. L. C. Imports v M & L Siegel, Inc. (98 Misc 2d 179 [Civ Ct, NY County 1979]), had held that an action against the transferee in a bulk sale *924 without notice could not be maintained in the Civil Court for lack of the requisite equity jurisdiction. Likewise, Circulation Assocs. v Mother’s Manual (53 Misc 2d 225 [Civ Ct, NY County 1967]), held that the Civil Court lacked subject matter jurisdiction of an action to set aside a fraudulent conveyance under article 10 of the Debtor and Creditor Law. The action was held to be equitable in nature, and, therefore, outside the powers of the Civil Court, despite the fact that it had ostensibly been brought for money damages. Krauss v Dinerstein (62 Misc 2d 682 [Civ Ct, NY County 1970]), followed the holding and the reasoning of Circulation Assocs. v Mother’s Manual (supra), on the same point.
Although prior to 1980, the Civil Court had been granted equity powers in specifically prescribed circumstances (CCA 208 [c] [1]; 209, 212), its exercise of jurisdiction over actions for rescission and reformation was limited to counterclaims for such relief by CCA 208 (c) (1). In 1980 CCA 213 was enacted, reading as follows: "The [civil] court shall have jurisdiction of actions for rescission or reformation of a transaction if the amount in controversy does not exceed ten thousand dollars” (L 1980, ch 587, § 1). In 1984 section 213 was amended to raise the required "amount in controversy” to $25,000 (L 1984, ch 11, § 9). The self-evident purpose of the legislation was that "If the [civil] court can provide relief in the nature of rescission or reformation on a counterclaim, it should be able to entertain an action requesting such relief by a plaintiff.” (1980 NY Legis Ann, at 245.)
A creditor’s action to set aside transfers and follow assets of a corporate debtor pursuant to article 10, section 278 of the Debtor and Creditor Law, such as plaintiff Talbot asserts in its eighth cause of action, has long been characterized as an action in equity for rescission. (Hearn 45 St. Corp. v Jano, 283 NY 139 [1940].) Explaining its holding that the action was one for rescission, the Court of Appeals stated, "The gravamen of the action is the right of the creditor to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which apparently contradict that right.” (Hearn 45 St. Corp. v Jano, supra, at 143.) This characterization of actions for rescission applies equally to actions under the Bulk Sales Act to declare a transfer of assets "ineffective”. (UCC 6-104, 6-105, 6-107.)
The only post-1980 authority cited by defendants is St. Johnland Nursing Home v Perlman (134 Misc 2d 1048 [Suffolk County Ct 1987]) which held that the County Court lacked *925 subject matter jurisdiction to set aside a fraudulent conveyance under Debtor and Creditor Law § 279. The decision relies on the New York State constitutional provisions (art VI, § 11 [b]), defining and limiting the powers of the County Courts. The powers of the Civil Court are derived from NY Constitution, article VI, § 15. For that reason, the St. Johnland case is neither binding nor persuasive authority as to the jurisdiction of the Civil Court. More closely on point and supportive of this court’s decision is Mark v William Muschel, Inc. (135 Misc 2d 804 [Civ Ct, NY County]) which held that CCA 213 granted to the Civil Court the power to order the rescission of a lease at the instance of a party plaintiff, where previously that relief could only be granted pursuant to an equitable defense.
Accordingly, plaintiff’s sixth, seventh and eighth causes of action, while being equitable claims for rescission, may nevertheless be maintained in the Civil Court pursuant to CCA 213, since the amount in controversy is less than $25,000. Defendants’ motion to dismiss these causes of action is denied. Plaintiff’s cross motion to amend the caption of this action to reflect changes in the names of both corporate defendants is not opposed by said defendants and is granted.